IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PHOTIOS COUGENTAKIS, as Senior Collateral Agent for and on behalf of:<br><br>Interfor Investments LLC;<br>Takeley Investments, Limited;<br>Photios Cougentakis;<br>Gabriel Financial Partners;<br>George Morris;<br>Gulalai Mayor;<br>Anton Parisi;<br>James and Patricia Sanchez;<br>Shalva Morris;<br>Gerald Horst;<br>Hal Cook;<br>Robert Henderson;<br>Chris Woodruff;<br>Daniel Selznick;<br>Greg Mudwilder;<br>Steven H. Noel Trust;<br>Ed Arnold;<br>H. Robert Weiner Trust of 1983; and<br>Blanche Weiner Trust of 1982<br>(collectively referred to herein as "Senior Creditors")<br><br>Plaintiff,<br><br>v.<br><br>STRATEGIC MEDIA I LLC; MARC H. BELL; DANIEL C. STATON; BELL FAMILY 2000 TRUST AGREEMENT; STATON FAMILY INVESTMENTS, LTD a/k/a STATON FAMILY INVESTMENTS LLC; and JOHN DOE ENTITIES 1-10,<br><br>Defendants. | Case No._____  JUDGE PAULEY<br><br>COMPLAINT  13 CV 8361<br><br> |

Plaintiff Photios Cougentakis a/k/a Frank Cougentakis ("Plaintiff"), as Senior Collateral Agent for and on behalf of the Senior Creditors, by and through undersigned counsel, brings this Complaint against the above-named Defendants, and in support thereof alleges the following upon information and belief:

1

## INTRODUCTION

1.      This is a civil action based upon diversity jurisdiction seeking to obtain recovery from Defendant Strategic Media I LLC ("Strategic") for non-payment under certain promissory notes issued to each of the Senior Creditors and for material breach of the payment obligations by Strategic and Defendants Bell and Staton under certain of the Senior Creditor loan documents.  This action also seeks to pierce the corporate veil of Strategic to obtain a judgment against Defendants Bell and Staton and against certain trusts and other entities controlled and manipulated by Bell and Staton for the obligations of Strategic.

2.      This civil action also seeks declaratory and injunctive relief to declare the obligations of Strategic in this matter to be the obligations of Bell and Staton and of certain of the trusts and entities controlled and manipulated by Bell and Staton and to enjoin Defendants from fraudulently conveying their respective assets to avoid any judgment obtained in this action.

## JURISDICTION AND VENUE

3.      This Court has federal subject matter jurisdiction of the state law claims alleged herein pursuant to 28 U.S.C. § 1332 in that this action is between parties who are citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interests and costs.

4.      Plaintiff's claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, by Rules 57 and 65 of the Federal Rules of Civil Procedure, and by the general legal and equitable powers of this Court.

5.      Venue is proper under 28 U.S.C. § 1391(b)(2) because this is the judicial district in which the agreements were drafted and consummated and in which the parties agreed to litigate all disputes arising from the Senior Creditor loan documents.

## PARTIES

6. Plaintiff Photios Cougentakis is an individual residing in Nassau County, New York, and serving as the Senior Collateral Agent for, and on behalf of, the Senior Creditors (hereinafter "Senior Collateral Agent"). In addition, Photios Cougentakis as an individual Senior Creditor also has an interest as a Senior Creditor being protected and represented exclusively by the Senior Collateral Agent, as more fully described below.

7. Interfor Investments LLC ("Interfor") is a Delaware limited liability company with its principal place of business in New York, New York. Interfor is not a party to this lawsuit but has an interest as an agent to its principal ("Interfor Principal"), which is a Senior Creditor, as described below, being protected and represented exclusively by the Senior Collateral Agent, also more fully described below. To the extent Interfor serves as agent for Interfor's Principal under the Senior Creditor loan transaction documents described hereinbelow, it has replaced IIG Capital LLC under the Senior Creditor loan transaction documents described hereinbelow.

8. Takeley Investments, Limited, is a British Virgin Islands limited liability company with its principal place of business in Bermuda. Takeley Investments, Limited is not a party to this lawsuit but has an interest as a Senior Creditor, as described below, being protected and represented exclusively by the Senior Collateral Agent, also more fully described below.

9. Gabriel Financial Partners is a New York partnership with its principal place of business in New York. Gabriel Financial Partners is not a party to this lawsuit but has an interest as a Senior Creditor, as described below, being protected and represented exclusively by the Senior Collateral Agent, also more fully described below.

10. George Morris is an individual residing in New York. George Morris is not a party to this lawsuit but has an interest as a Senior Creditor, as described below, being protected and represented exclusively by the Senior Collateral Agent, also more fully described below.

11. Gulalai Mayor is an individual residing in New York. Gulalai Mayor is not a party to this lawsuit but has an interest as a Senior Creditor, as described below, being protected and represented exclusively by the Senior Collateral Agent, also more fully described below.

12. Anton Parisi is an individual residing in New York. Anton Parisi is not a party to this lawsuit but has an interest as a Senior Creditor, as described below, being protected and represented exclusively by the Senior Collateral Agent, also more fully described below.

13. James and Patricia Sanchez are individuals residing in California. Neither James nor Patricia Sanchez are parties to this lawsuit but each has an interest as a Senior Creditor, as described below, being protected and represented exclusively by the Senior Collateral Agent, also more fully described below.

14. Shalva Morris is an individual residing in New York. Shalva Morris is not a party to this lawsuit but has an interest as a Senior Creditor, as described below, being protected and represented exclusively by the Senior Collateral Agent, also more fully described below.

15. Gerald Horst is an individual residing in Pennsylvania. Gerald Horst is not a party to this lawsuit but has an interest as a Senior Creditor, as described below, being protected and represented exclusively by the Senior Collateral Agent, also more fully described below.

16. Hal Cook is an individual residing in Texas. Hal Cook is not a party to this lawsuit but has an interest as a Senior Creditor, as described below, being protected and represented exclusively by the Senior Collateral Agent, also more fully described below.

17. Robert Henderson is an individual residing in Utah. Robert Henderson is not a party to this lawsuit but has an interest as a Senior Creditor, as described below, being protected and represented exclusively by the Senior Collateral Agent, also more fully described below.

18. Chris Woodruff is an individual residing in Texas. Chris Woodruff is not a party to this lawsuit but has an interest as a Senior Creditor, as described below, being protected and represented exclusively by the Senior Collateral Agent, also more fully described below.

19. Daniel Selznick is an individual residing in Arizona. Daniel Selznick is not a party to this lawsuit but has an interest as a Senior Creditor, as described below, being protected and represented exclusively by the Senior Collateral Agent, also more fully described below.

20. Greg Mudwilder is an individual residing in California. Greg Mudwilder is not a party to this lawsuit but has an interest as a Senior Creditor, as described below, being protected and represented exclusively by the Senior Collateral Agent, also more fully described below.

21. Steven H. Noel Trust is an Iowa trust with its principal place of business in Iowa. Steven H. Noel Trust is not a party to this lawsuit but has an interest as a Senior Creditor, as described below, being protected and represented exclusively by the Senior Collateral Agent, also more fully described below.

22. Ed Arnold is an individual residing in Pennsylvania. Ed Arnold is not a party to this lawsuit but has an interest as a Senior Creditor, as described below, being protected and represented exclusively by the Senior Collateral Agent, also more fully described below.

23. H. Robert Weiner Trust of 1983 is a California trust with its principal place of business in California. H. Robert Weiner Trust of 1983 is not a party to this lawsuit but has an interest as a Senior Creditor, as described below, being protected and represented exclusively by the Senior Collateral Agent, also more fully described below.

24. Blanche Weiner Trust of 1982 is a California trust with its principal place of business in California. Blanche Weiner Trust of 1982 is not a party to this lawsuit but has an interest as a Senior Creditor, as described below, being protected and represented exclusively by the Senior Collateral Agent, also more fully described below.

25. Defendant Strategic Media I LLC ("Strategic") is a Delaware limited liability company with its principal place of business in Palm Beach County, Florida.

26. Defendant Marc H. Bell ("Bell") is an individual who resides in Palm Beach County, Florida.

27. Defendant Daniel C. Staton ("Staton") is an individual who resides in Palm Beach County, Florida.

28. Defendant Bell Family 2000 Trust Agreement ("Bell Trust") is a Florida trust which is located in Palm Beach County, Florida.

29. Defendant Staton Family Investments, Ltd. a/k/a Staton Family Investments LLC ("Staton Investments") is an Ohio limited liability company with its principal place of business in Palm Beach County, Florida.

30. John Doe Entities 1-10 are entities, the current identities of which are unknown to Plaintiff, used by Defendants Bell and Staton as alter egos to further their fraudulent and wrongful conduct.

## FACTUAL ALLEGATIONS

### Background

31. The transactions giving rise to the Senior Creditor promissory notes and Senior Creditor loan documents took place on or about December 18, 2008. Prior to the consummation of these transactions, each of the Senior Creditors had existing prior liens on and/or claims to all or a portion of 34,713,800 shares ("Aggregate Shares") of Series B Common Stock ("FFN Series

B Common Stock") of FriendFinder Networks Inc. ("FFN"), a Nevada corporation"", owned by Interactive Brand Development, Inc. ("IBD").

32. The Secured Creditors' liens on and/or claims to the Aggregate Shares were granted to the Secured Creditors by IDB for loan funds IBD had either guaranteed or borrowed directly from the Secured Creditors.

33. For contextual information purposes only, and not specifically relevant to the causes of action herein, FFN formerly was a Nevada corporation known as Penthouse Media Group Inc., and is understood to be the successor by merger to Penthouse Media Group Inc., a Delaware corporation ("PMG-DEL"). That merger was effected in March 2006 and, in connection with that merger, each pre-existing share of Series B Common Stock of PMG-DEL was converted into and exchanged for one hundred (100) shares of FFN Series B Common Stock.

34. General Media, Inc. ("GMI") was the publisher of Penthouse Magazine. In 2003, GMI filed a bankruptcy petition under Chapter 11 for reorganization.

35. In September 2003, Defendants Bell and Staton formed PET Capital Partners LLC ("PET"), to acquire GMI's secured notes and preferred stock.

36. In connection with the bankruptcy, in September 2004, IBD purchased approximately 28% of the non-voting Series B common stock from PET for $16,000,000. In connection with the purchase agreement relating to this transaction, IBD was entitled to certain rights under a shareholders' agreement, including the right to receive notice of and to participate on a pro rata basis in, any issuance or sale of securities to a related party such that its shares would not be diluted.

37. GMI emerged from bankruptcy in October, 2004 under the name Penthouse Media Group, Inc. ("PMG"). The primary business of PMG at that time was the publication of

7

Penthouse Magazine and various related adult publications, video, film and video content, and over one million images. The licensing segment included the licensing of the Penthouse name, logos, trademarks and artwork for the manufacture, sale and distribution of consumer products.

38. In December 2007, PMG acquired Various, Inc. ("Various") (an adult social network operator) for approximately $401.0 million, which was paid in cash and notes together with related warrants. The focus of PMG's business changed with this acquisition to internet related adult entertainment, including social networking, live interactive video, and premium content websites.

39. At that time, IBD claimed that actions taken by PMG and Defendants Bell and Staton in connection with the Various transaction, violated IBD's rights under a shareholders' agreement, and various state and federal securities laws. IBD threatened litigation in connection with its claims.

40. On July 1, 2008, in anticipation of conducting an IPO, PMG changed its name to FriendFinder Networks, Inc. (what was previously defined herein as "FFN"). FFN owns approximately 44,000 websites and operates in over 200 countries in 12 languages. Some of FFN's most heavily visited websites include AdultFriendFinder.com, Amigos.com, and BigChurch.com. The Company has more than 484 million registrants and over 320 million members.

41. In 2008, Defendants Bell and Staton represented to various parties that they wished to take FFN public through an initial public offering ("IPO").

42. In order to do so, however, Defendants Bell and Staton believed that they would need to reach an agreement with IBD to avoid litigation that would deleteriously affect the IPO and jeopardize its success.

**The Senior Creditor Loan Transaction**

43. Defendants Bell and Staton desired to purchase 25,483,300 of the Aggregate Shares held by IBD ("Acquired Shares") and to obtain a general release of all claims.

44. To achieve this end, Defendants Bell and Staton created Strategic. Strategic would purchase all of the Acquired Shares for a down payment of $3.65 million ("Initial Senior Payment"), and issue promissory notes to each of the Senior Creditors ("Senior Promissory Notes") for an aggregate sum certain of $15,485,000 ("Final Senior Payment Amount"), representing the balance owed to the Senior Creditors. (A true and correct copy of each of the Senior Creditor Promissory Notes is attached hereto as Exhibit 1).

45. The parties entered into a Senior Security Interest Release Agreement (Senior Creditors) ("Senior Release Agreement") setting forth the terms of the transaction. (A true and correct copy of the Senior Release Agreement is attached hereto as Exhibit 2).

46. Under the terms of the Senior Release Agreement and a pledge agreement ("Senior Pledge Agreement"), Strategic secured the respective Senior Promissory Notes by a perfected security interest in the Acquired Shares by, inter alia, providing the Senior Creditors possession of the Acquired Shares (hereinafter the "Pledged Shares"). (A true and correct copy of the Senior Pledge Agreement is attached hereto as Exhibit 3).

47. Specifically, the Pledged Shares would be held by an escrow agent ("Senior Escrow Agent"), who would be required to release the Pledged Shares to the Senior Creditors via the Senior Collateral Agent upon default pursuant to the terms of the Senior Creditor loan transaction documents and in conformity with the Uniform Commercial Code of the State of New York ("NYUCC").

48. In addition to the Senior Creditors, who had a prior senior interest in and to the Pledged Shares, there were creditors junior to the Senior Creditors who also had claimed an interest in and to the Pledged Shares ("Junior Creditors").

49. To obtain releases from the Junior Creditors, Defendants Bell and Staton had Strategic issue promissory notes to each of the Junior Creditors ("Junior Promissory Notes") totaling $17,515,000 ("Junior Payment Amount"). The Junior Creditors also entered into a release agreement ("Junior Release Agreement") and pledge agreement ("Junior Pledge Agreement") providing the Junior Creditors with a security interest in the Pledged Shares junior to the Senior Creditors. (A true and correct copy of the Junior Release Agreement and Junior Pledge Agreement are attached hereto as Exhibits 4 and 5, respectively).

50. In addition, the Senior and Junior Creditors entered into an intercreditor agreement ("Senior Intercreditor Agreement"), signed by Strategic for acknowledgment purposes and as a third-party beneficiary of rights granted under two expressed provisions. (A true and correct copy of the Senior Intercreditor Agreement is attached hereto as Exhibit 6). Hereafter, the Senior Promissory Notes, the Senior Release Agreement, the Senior Pledge Agreement, the Senior Escrow Agent, and the Senior Intercreditor Agreement shall be collectively referred to as the Senior Documents.

### The Relevant Terms of the Senior Documents and Breach Thereof

51. After Strategic paid the Initial Senior Payment, the balance due all Senior Creditors under the Senior Release Agreement and the respective Senior Promissory Notes was the Final Senior Payment Amount of $15,485,000 plus any special adjustments owed to Interfor ("Special Payment Adjustments").

52. Pursuant to the terms of the Senior Documents, the total Special Payment Adjustments owed to Interfor as of the date of filing this complaint is $ 1.2 million, which

amount increases by $150,000 on every six-month anniversary of October 31, 2009, occurring after the filing of this litigation until paid.

53. Pursuant to the terms of the Senior Documents, the latest possible payment date of the Final Senior Payment Amount was December 31, 2011 ("Final Senior Payment Date").

54. Pursuant to the terms of the Senior Documents, Strategic waived presentment, demand, protest, and notice of protest of the Senior Promissory Notes.

55. Strategic has made no payments toward the Final Senior Payment Amount or toward the Special Payment Adjustments.

56. Pursuant to the Senior Documents, interest began to accrue on the Final Senior Payment Amount from the Final Senior Payment Date at a rate per annum (computed on the basis of the actual number of days elapsed over a year of 360 days) equal to ten percent (10%) of the unpaid principal balance of the Senior Promissory Notes, with such interest to be payable quarterly, in arrears, on the last day of March, June, September, and December of each year, and upon the making of the Final Senior Payment Amount ("Senior Default Interest").

57. Strategic has made no payments on the accrued Senior Default Interest.

58. Pursuant to the terms of the Senior Documents, if, prior to the payment in full of the Final Senior Payment Amount, the Bell/Staton Group, as defined by the Senior Release Agreement, sells shares of FFN capital stock in one or more transactions (whether related or unrelated) for an aggregate purchase price greater than $50 million, then Bell and Staton jointly and severally shall pay, or shall cause the Bell/Staton Group to pay, to the Senior Creditors a one-time lump sum payment in the aggregate amount of $2.4 million ("Additional Payment").

59. FFN was, at all times relevant hereto, a member of the Bell/Staton Group pursuant to the terms of the Senior Release Agreement.

60. Prior to the payment in full of the Final Senior Payment Amount, FFN sold shares of FFN capital stock for an aggregate purchase price greater than $50 million and as such Defendant Bell and Staton and all other Defendants as part of the Bell/Staton Group are liable to the Senior Creditors for the Additional Payment.

**Post-Default Possession and Disposition of Pledged Shares**

61. Pursuant to the Senior Documents, Plaintiff, as Senior Collateral Agent, is exclusively authorized to take possession and dispose of the Pledged Shares for, and on behalf of, the Senior Creditors and to take any and all actions he deems appropriate to collect on all amounts due and owing to the Senior Creditors pursuant to the Senior Documents.

62. On or about May 8, 2012, the Senior Collateral Agent took possession of the Pledged Shares.

63. As a result of a prior 20:1 reverse split of all common stock, FFN converted the Pledged Shares to 1,274,165 publicly traded shares of FFN common stock ("Converted Pledged Shares").

64. From June 27, 2012, until December 31, 2012, the Senior Collateral Agent disposed of all of the Converted Pledged Shares for a total of $702,435.48, net of brokerage fees ("Senior Collateral Proceeds").  (A true and correct copy of the disposal transactions, dates, amounts, and amounts of the Senior Collateral Proceeds is attached hereto as Exhibit 7).

65. The Senior Collateral Agent has expended $61,700 as the reasonable costs and expenses, incurred in connection with his retaking, holding, preparing for sale, and selling of the Pledged Shares prior to applying same to the payment of the other Senior obligations ("Disposal Costs").

66. Pursuant to the terms of the Senior Documents, the Senior Collateral Agent has deducted the Disposal Costs as the reasonable costs and expenses incurred in connection with its

retaking, holding, preparing for sale, and selling of Collateral prior to applying the Senior Collateral Proceeds to the payment of the other Senior obligations.

## Piercing the Corporate Veil of Strategic

67. Defendants Bell and Staton are liable for all of the monies owed by Strategic to the Senior Creditors under the Senior Documents because Defendants Bell and Staton created and operated Strategic as an alter ego for the purpose of inducing Plaintiff and the Senior Creditors to release all of their claims against the Aggregate and Acquired Shares without any intention of making the Final Payment Amount.

68. Defendants Bell and Staton created Strategic for one purpose: to fraudulently and/or wrongfully induce Plaintiff and the Senior Creditors into releasing all of their liens and claims in and to the Aggregate and Acquired Shares.

69. Defendants Bell and Staton exercised total and complete dominion over Strategic at all times relevant to this litigation.

70. Defendants Bell and Staton operated Strategic at all times relevant to this litigation as their alter ego without the formalities and paraphernalia that are part and parcel of the normal corporate or limited liability entity existence.  Specifically, Bell and Staton had total control over Strategic; obtained their controlling collective 50% membership interest in Strategic for a nominal consideration; operated Strategic out of Defendant Bell's other offices where he operates all of his alter ego entities and trusts; operated Strategic with no employees, equipment, stationary, or separate physical existence outside of Defendant Bell's other businesses and office infrastructure; called for no elections or company-wide meetings; and maintained no contemporaneous corporate records.

71. Defendants Bell and Staton created and operated Strategic without adequate capitalization to even effect its purpose to fulfill its obligations under the Senior Documents.

72. Specifically, to purchase the Acquired Shares, Strategic was required to pay the Initial Senior Payment of $3.65 million and to execute the Senior and Junior Promissory Notes totaling $33 million.

73. However, Defendants Bell and Staton, through their respective alter egos, Defendants Bell Trust and Staton Investments, contributed a total of only $20,000 for their 50% interest in Strategic, but defrauded a group of investors ("Strategic Investors") to invest slightly more funds than was required for the Initial Senior Payment (i.e., $3.85 million) for an aggregate interest in Strategic of 50%.

74. According to a complaint ("Strategic Investors' Lawsuit") filed by the Strategic Investors against Defendants Bell and Staton and other Bell/Staton controlled entities, which include Defendants Bell Trust and Staton Investments, Defendants Bell and Staton and the Bell/Staton controlled entities defrauded and breached various duties owed to the Strategic Investors by, inter alia, representing to the Strategic Investors that Defendants Bell and Staton guaranteed the Strategic Investors principal and minimum profits. (A true and correct copy of the complaint filed in the Strategic Investors' Lawsuit is attached hereto as Exhibit 8).

75. Moreover, according to the Strategic Investors' Lawsuit, Defendants Bell and Staton promised the Strategic Investors that the planned FFN IPO would itself generate the funds to pay the Final Senior Payment Amount (i.e., the balance due on the purchase of the Acquired Shares by Strategic). How and why the Strategic Investors thought the FFN IPO funds could and would be used for a Strategic obligation to the Senior and Junior Creditors is not explained in the Strategic Investors' Lawsuit.

76. This representation by Defendants Bell and Staton for the requisite future capitalization of Strategic was fraudulent. One, there could be no guarantee that there would be an IPO. Two, Defendants Bell and Staton could not have known that the IPO would generate

14

sufficient funds for Strategic, or any party, to make the Final Senior Payment Amount.  And three, and most importantly, the FFN IPO could not generate funds for Strategic to use to make the Final Senior Payment Amount because the Acquired Shares and any other shares owned or controlled by Defendants Bell and Staton and their affiliated entities were part of a "lock-up" agreement or were restricted stock and could not be sold at or soon after the IPO.  In other words, Defendants Bell and Staton had not only undercapitalized Strategic, they made false representations about their ability to simply move funds from FFN earned at some prospective IPO into Strategic.

77. At set forth above, Defendants Bell and Staton literally represented to the Strategic Investors that the future "adequate" capitalization of Strategic would come about because Defendants Bell and Staton would treat FFN's money as their own, and they could do this because Defendants Bell and Staton considered FFN and Defendants Bell Trust, Staton Investments, and Strategic, as their own alter egos.

78. Defendants Bell and Staton defrauded the Strategic Investors and undercapitalized Strategic because they never intended to pay the Final Senior Payment Amount.  Treating Strategic like a shell, Defendants Bell and Staton obtained the releases from the Senior and Junior Creditors and were more than prepared to simply pay the Initial Senior Payment (with the money obtained from the defrauded Strategic Investors) and then walk away from the Strategic obligations and allow the Senior Creditors to take possession of the Pledged Shares.

79. Defendants Bell and Staton utilized Defendants Bell Trust and Staton Investments as alter egos to take possession of the membership interests in Strategic for and on behalf of Bell and Staton, respectively.

80. Defendants Bell and Staton also structured Strategic such that its manager for all purposes set forth herein was Staton Investments, operating as an alter ego of Defendants Bell

15

and Staton. Staton Investments could only be removed with the approval of at least one of the Defendants Bell or Staton through their respective control of Defendants Bell Trust and Staton Investments.

81. The reason Defendants Bell and Staton concocted this scheme and artifice was in an effort to raise money through the FFN IPO and to extract the IPO proceeds as their own. Indeed, Defendants Bell and Staton apparently convinced the Strategic Investors that they could and would do so for the benefit of Strategic and the Strategic Investors, but Defendants Bell and Staton double-crossed them. (See, e.g., the Strategic Investor's Lawsuit complaint at Ex. 8 at ¶¶ 22-91).

82. Beyond the Strategic Investor's Lawsuit, a class action lawsuit has been filed in federal court ("Class Action Litigation"), which together with the Strategic Investors' Lawsuit, explains one of the means Defendants Bell and Staton have consummated their fraudulent and/or wrongful schemes and artifices. Specifically, when FFN prepared for and conducted its IPO, which raised $50 million, Defendants Bell and Staton had agreed that they, and their affiliates and associates, including FFN, would "lock-up" all of the other FFN shares outstanding or convertible to FFN common stock for a period of 180 days. (See ¶¶ 27-34 of the complaint in the Class Action Litigation, a true and correct copy of which is attached hereto as Exhibit 9).

83. But that was not the case. The "locked up" FFN shares were traded during the "lock up" period and Defendants Bell and Staton extracted millions of dollars from FFN in violation of the "lock up" agreement and in violation of representations to the Strategic Investors.

84. Defendants Bell and Staton have transferred the monies improperly extracted from FFN into the various family trusts and other family entities of Defendants Bell and Staton, including Defendants Bell Trust, Staton Investments, and into various John Doe entities.

85. Defendants Bell and Staton have used the other Defendants as their alter egos to create a ruse that Strategic was a viable entity with adequate funding to enter into the transactions described hereinabove. As a result, Defendants Bell and Staton and their alter egos have profited immensely from the FFN IPO, effectively turning the FFN publicly traded stock (and necessarily the Pledged Shares) into nearly worthless "penny stock" and walked away from Strategic and Strategic's obligations to Plaintiff and the Senior Creditors.

86. Not surprisingly, FFN and its various affiliates filed for bankruptcy under Title 11 of Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101, et seq. (the "Bankruptcy Code") on September 17, 2013 (the "Petition Date") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

## FIRST CLAIM FOR RELIEF

**(Default Under the Senior Promissory Notes: Defendant Strategic)**

87. Plaintiff hereby incorporates by reference all stated paragraphs as though fully set forth herein.

88. Defendant Strategic is in default under the Senior Promissory Notes in the amount of the Senior Final Payment plus the Special Adjustments plus the Senior Default Interest ("Total Senior Promissory Notes Payment").

89. Pursuant to the terms of the Senior Documents, the Total Senior Promissory Notes Payment shall be reduced by the sum of the Collateral Proceeds less the Disposal Costs.

## SECOND CLAIM FOR RELIEF

**(Breach of the Payment Obligations Under the Senior Documents: Defendant Strategic)**

90. Plaintiff hereby incorporates by reference all stated paragraphs as though fully set forth herein.

91. Under the Senior Documents, Defendant Strategic was obligated to make the payments calculated above as the Total Senior Promissory Notes Payment.

92. Defendant Strategic has made no payments toward the Senior Promissory Notes Payment.

93. Pursuant to the terms of the Senior Documents, the Total Senior Promissory Notes Payment shall be reduced by the sum of the Collateral Proceeds less the Disposal Costs.

### THIRD CLAIM FOR RELIEF

### (Breach of the Payment Obligations Under the Senior Documents:

### Defendants Bell and Staton)

94. Plaintiff hereby incorporates by reference all stated paragraphs as though fully set forth herein.

95. Pursuant to the terms of the Senior Release Agreement, Defendants Bell and Staton are jointly and severally obligated to pay the Additional Payment to the Senior Creditors.

96. Pursuant to the terms of the Senior Release Agreement, Defendants Bell and Staton are obligated to "cause the Bell/Staton Group to pay" the Additional Payment.

### FOURTH CLAIM FOR RELIEF

### (Piercing the Corporate Veil)

97. Plaintiff hereby incorporates by reference all stated paragraphs as though fully set forth herein.

98. Defendants Bell and Staton have treated Strategic as its alter ego in the effort to engage in fraud and/or wrongful conduct toward Senior Creditors (and others).

99. Defendants Bell and Staton are liable for all of the obligations of Strategic set forth above.

100. Defendants Bell and Staton have utilized all of the other Defendants as their alter egos to effectuate the fraudulent and/or wrongful conduct insofar as these entities are part and parcel of the Bell/Staton Group specifically identified in the Senior Documents.

101. Defendants Bell and Staton have utilized all of the other Defendants to effectuate the fraud on the Strategic Investors which allowed Defendants Bell and Staton to obtain the Initial Senior Payment to induce the Senior Creditors and Plaintiff to enter into the transactions set forth in the Senior Documents.

## PRAYER FOR RELIEF

Wherefore, Plaintiff Senior Collateral Agent prays for judgment as follows:

A. That this Court adjudge Defendant Strategic liable for the Total Senior Promissory Notes Payment reduced by the sum of the Collateral Proceeds less the Disposal Costs;

B. That this Court adjudge Defendants Bell and Staton liable for the Additional Payment;

C. That this Court declare that Defendants Bell and Staton must cause the Bell/Staton Group, as that term is defined in the Senior Release Agreement, to pay the Additional Payment;

D. That this Court declare and adjudge Defendants Bell and Staton liable for all of the obligations of Strategic under the Senior Documents as set forth above on the grounds that Strategic was at all relevant times hereto the alter ego of Defendants Bell and Staton for purposes of fraudulent and/or wrongful conduct and that it would be inequitable under the circumstances to treat Strategic as a separate entity from Defendants Bell and Staton.

E. That this Court declare and adjudge the remaining Defendants, as part of the Bell/Staton Group, liable for all of the obligations of Strategic under the Senior Documents as set

forth above on the grounds that Strategic was at all relevant times hereto the alter ego of Defendants Bell and Staton and the Bell/Staton Group for purposes of fraudulent and/or wrongful conduct and that it would be inequitable under the circumstances to treat Strategic as a separate entity from Defendants Bell and Staton.

F.      That this Court declare and enjoin all Defendants from transferring or conveying any of their respective assets until the judgments awarded hereunder are paid in full;

G.      That this Court award post judgment interest on all judgment amounts awarded herein;

H.      That this Court grant such other and further relief as it deems equitable and just under the circumstances.

                Respectfully submitted,

                **LAW OFFICES OF DAVID YERUSHALMI, P.C.**



                _____
                David Yerushalmi, Esq. (AZ. Bar No. 009616;
                DC Bar No. 978179; CA Bar No. 132011; NY Bar No. 4632568)
                640 Eastern Parkway, Suite 4C
                Brooklyn, NY 11213
                david.yerushalmi@verizon.net
                (646) 262-0500

                Robert J. Muise, Esq.* (MI Bar No. P62849)
                P.O. Box 131098
                Ann Arbor, MI 48113
                rmuise@americanfreedomlawcenter.org
                (734) 635-3756
                *Subject to admission *pro hac vice*
                *Counsel for Plaintiff Senior Collateral Agent–*