UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/4/14

PHOTIOS COUGENTAKIS,                        :

           Plaintiff,                        :          13cv8361

       - against -                        :          <u>MEMORANDUM & ORDER</u>

STRATEGIC MEDIA I, LLC, *et al.*,          :

          Defendants.                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

       Photios Cougentakis as a collateral agent on behalf a group of Senior Creditors[1]

brings this breach of contract action against Strategic Media I, LLC; Mark Bell; Daniel Staton;,

and two trusts—the Bell Family 2000 Trust Agreement, and Staton Family Investments, Ltd.

(together, the "Trusts").  Cougentakis moves for summary judgment against Strategic, Bell and

Staton and seeks an order for specific performance against the Trusts.  Strategic also moves for

summary judgment on the breach of contract claim based on equitable estoppel.  Finally, Bell,

Staton, and the Trusts move to dismiss the veil piercing claims for failure to state a claim.

       For the following reasons, Cougentakis' motion for summary judgment on the

breach of contract claim is granted, his application for specific performance is denied, Strategic's

motion for summary judgment on the contract claim is denied, Bell and Staton's motions to

dismiss the veil piercing claims are denied, and the Trusts' motions to dismiss the veil piercing

claims are granted with leave to replead.

---

[1] The Senior Creditors consist of Cougentakis; Interfor Investments, LLC; Takeley Investments, Limited; Gabriel Financial Partners; George Morris; Gulalai Mayor; Anton Parisi; James Sanchez; Patricia Sanchez; Shalva Morris; Gerlad Horst; Hal Cook; H. Robert Weiner Trust of 1983; and Blanche Weiner Trust of 1982.

## BACKGROUND

For purposes of the various summary judgment motions, the following facts are undisputed, and with respect to Defendants' motion to dismiss the veil piercing claim, the allegations in the Complaint are accepted as true.  In 2003, General Media Inc. ("GMI"), the former publisher of Penthouse Magazine, filed a bankruptcy petition.  Staton and Bell formed PET Capital Partners ("PET") to acquire some of GMI's secured notes and preferred stock.  GMI restructured and emerged from bankruptcy as Penthouse Media Group, which was later renamed FriendFinder Networks ("FFN").  PET also sold a portion of its GMI/FFN preferred stock to Interactive Brand Development, which used those shares to guarantee certain debts.  The Senior Creditors in this action are Interactive's debtholders.

In 2008, Bell and Staton formed Strategic as part of a leveraged buyout of FFN preferred shares owned by Interactive and in preparation for an initial public offering of FFN.  At the time of the leveraged buyout, the Senior Creditors had certain legal disputes with Interactive and claims on Interactive's FFN preferred shares.  In exchange for Interactive's FFN preferred shares and a release of their claims, Strategic paid the Senior Creditors $3.65 million as a down payment together with a $15.485 million promissory note.  The parties' contracts also provided for an additional payment of $2.4 million by Staton and Bell in the event Strategic executed stock sales worth more than $50 million (the "Additional Payment").  All payments by Strategic, Staton, and Bell, including the promissory note payment, were due by December 31, 2011.

Strategic made the $3.65 million down payment, but failed to pay off the promissory note.  The parties' agreement provided that Cougentakis would take possession of the FFN preferred shares from Strategic and sell them for the Senior Creditors' benefit in the event

of default.  Following Strategic's non-payment of the promissory note, Cougentakis did just that and sold the FFN preferred shares for $702,405.[2]

## DISCUSSION

I.    **Motion for Summary Judgment**

    A.    <u>Legal Standard</u>

        Summary judgment should be granted if the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); <u>see also</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247 (1986). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor."  <u>Beyer v. Cnty. of Nassau</u>, 524 F.3d 160, 163 (2d Cir. 2008) (citing <u>Guilbert v. Gardner</u>, 480 F.3d 140, 145 (2d Cir. 2007).

        The burden of demonstrating the absence of any genuine dispute as to a material fact rests with the moving party.  <u>See</u> <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 157 (1970). Once the moving party has made an initial showing that there is no genuine dispute of material fact, the non-moving party cannot rely on the "mere existence of a scintilla of evidence" to defeat summary judgment, <u>Liberty Lobby</u>, 477 U.S. at 252, but must set forth "specific facts showing that there is a <u>genuine issue for trial</u>."  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (emphasis in original).  This Court resolves all factual ambiguities and draws all inferences in favor of the non-moving party.  <u>See</u> <u>Liberty Lobby</u>, 477 U.S. at 255.

---

[2] This amount excludes $9,573.69 in selling costs.

B.    Discussion

1.    *Breach of Contract and Promissory Note Default Claims*

Cougentakis moves for summary judgment on his breach of contract claim. "To establish a prima facie case for breach of contract, a plaintiff must plead and prove: (1) the existence of a contract; (2) a breach of that contract; and (3) damages resulting from the breach." Nat'l Mkt. Share, Inc. v. Sterling Nat'l Bank, 392 F.3d 520, 525 (2d Cir. 2004). In the context of a promissory note, under New York law, "a plaintiff must provide proof of the valid note and of defendant's failure, despite proper demand, to make payment." Cavendish Traders, Ltd. v. Nice Skate Shoes, Ltd., 117 F. Supp. 2d 394, 399 (S.D.N.Y. 2000).

Strategic breached its contract with the Senior Creditors. The promissory note payment was due on December 31, 2011. (Pl's 56.1 Statement ¶ 27.) Strategic could have met its obligations to the Senior Creditors by (1) paying the full amount of the promissory note or (2) during the six months prior to December 31, 2011, selling the FFN preferred shares and remitting the proceeds. (Pl's 56.1 Statement ¶ 28.) But Strategic did neither.

Strategic acknowledges that it had the ability to sell the FFN preferred shares beginning on November 7, 2011, but decided not to because the sale of "more than a million FFN shares into the market in such a short amount of time . . . would have negatively impacted the share price." (Deft's Opp. at 9.) But the fact that the price of FFN preferred shares would have plummeted did not relieve Strategic of its contractual obligation. In fact, the rationale that Strategic offers for its failure to sell the shares indicates that it acted against its self-interest and in favor of the interests of Staton and Bell, who were significant holders of FFN preferred shares.

Defendants counter that Cougentakis is equitably estopped from asserting his breach of contract claim. Equitable estoppel requires proof that the party to be estopped (1)

4

made a false representation or concealed material facts; (2) intended his conduct would be acted upon; and (3) knew the real facts.  It further requires that the party asserting estoppel (4) lacked knowledge of the true facts; (5) relied upon the conduct of the party estopped; and (6) suffered a prejudicial change.  Readco, Inc. v. Marine Midland Bank, 81 F.3d 295, 301-02 (2d Cir. 1996).  In addition, Defendants' conduct must be "not otherwise compatible with the agreement as written."  EMI Music Mktg. v. Avatar Records, Inc., 317 F. Supp. 2d 412, 421 (S.D.N.Y. 2004).

Strategic contends that Cougentakis is estopped from asserting the breach of contract claim because they failed to inform Strategic whether they wanted the FFN preferred shares transferred to them rather than being sold in the open market.  In November 2011, Staton asked Lloyd Beirne (a former FFN employee) to assess whether the Senior Creditors would prefer to receive the FFN preferred shares rather than have them sold.  (Deft's 56.1 Statement ¶¶ 128-133)  But Beirne never presented Staton's proposal to Cougentakis or any other Senior Creditor.  (Beirne Dep. at 55:8-83:6; Cougentakis Decl. ¶¶ 2-7.)  There is no evidence that Cougentakis made any statement or took any action in response to Staton's proposal that would give rise to estoppel.

Strategic also relies on an email from Richard Rubin (an attorney for one of the Senior Creditors) advising Strategic's lawyer there was "nothing" for the escrow agent—who was holding the FFN preferred shares acquired from Interactive—to do until Cougentakis and one of the Senior Creditors sent a notice.  That email does not support Strategic's estoppel claim.  It is undisputed that Rubin never discussed any agreement to accept the FFN preferred shares in lieu of a deficiency of judgment.  (Rubin Decl. ¶¶ 8-9.)

In sum, there is no evidence supporting Defendants' claim that, "communications among Plaintiff, the Senior Creditors, and Defendants indicated to Defendants that Strategic

would be permitted to return the Acquired Shares to the Plaintiff in satisfaction of the obligations found in the Senior Release Agreement." (Deft's Br. at 11.)  Accordingly, Cougentakis' motion for summary judgment on his breach of contract claims is granted and Strategic's motion for summary judgment on the contract claim is denied.

### 2. *Claim for the Additional Payment*

Cougentakis also moves for summary judgment and a court order for specific performance relating to the $2.4 million portion of the Additional Payment.  The Additional Payment constituted a personal obligation of Bell, Staton, and the Trusts to make a lump-sum payment in the event Bell, Staton, or any entity they control, or in which one or both of them serve as an officer, sold FFN stock for an aggregate purchase price greater than $50 million. From 2004 through at least December 2011, Bell and Staton were officers and directors of Strategic and controlled it.

In its initial public offering, Strategic raised $50 million from its sale of FFN shares.  Before the initial public offering, Bell and Staton sold 128,900 FFN shares at $0.20 per share.  On October 1, 2012, Bell and Staton each sold 15,625 FFN shares for $0.71 per share and 15,625 FFN shares for $0.86 per share.  And FFN used its then-publicly-traded stock to pay $500,000 for an asset acquisition and $4.4 million as part of a merger.  Taken together, Bell and Staton, and entities they controlled, sold FFN stock for an aggregate purchase price greater than $50 million.  Defendants' rely on the same generalized "communications" referenced in the contract claim discussed supra to support their estoppel claim here.  Those conclusory allegations do not create a material issue of fact as to whether estoppel applies here.  Accordingly, Bell and Staton are obligated to make the Additional Payment and Cougentakis' motion for summary judgment is granted.

3.    *Specific Performance*

The party seeking the "'extraordinary' equitable remedy of specific performance must demonstrate that remedies at law are incomplete and inadequate to accomplish substantial justice." Lucente v. Int'l Bus. Machines Corp., 310 F.3d 243, 262 (2d Cir. 2002).  Monetary damages are adequate compensation for breach of contract claims.  Accordingly, Cougentakis' motion for specific performance is denied.

## II. Motion to Dismiss

A.    Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  To determine plausibility, courts follow a "two-pronged approach."  Iqbal, 556 U.S. at 679.

First, courts are "required to proceed 'on the assumption that all the [factual] allegations in the complaint are true.'"  Anderson News, L.L.C. v. Am. Media, Inc., 680 F.3d 162, 185 (2d Cir. 2012) (alteration in original) (quoting Twombly, 550 U.S. at 555).  A court need not, however, accept legal conclusions "and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (internal quotation marks omitted).  Second, a court determines "whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'"  Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010) (quoting Iqbal, 556 U.S. at 679.)  "[F]actual content that is 'merely consistent with,' rather than suggestive of, a finding of liability will not support a reasonable inference."  N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC, 709 F.3d 109, 121 (2d Cir. 2013) (quoting Twombly, 550 U.S. at 556).

B.      Discussion

1.      *Choice of Law*

Staton, Bell, and the Trusts move to dismiss Plaintiff's veil piercing claims. Because the Complaint invokes diversity jurisdiction, New York's choice of law rules apply. See 28 U.S.C. § 1652; Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); Liberty Synergistics Inc. v. Microflo Ltd., 718 F.3d 138, 151 (2d Cir. 2013). Under New York choice of law principles, "the law of the state of incorporation determines when the corporate form will be disregarded and liability will be imposed on shareholders." Fletcher v. Atex, Inc., 68 F.3d 1451, 1456 (2d Cir. 1995) (citation omitted). Accordingly, because Strategic is a Delaware corporation,[3] Delaware law applies.

Defendants' argument that the choice of law provision in the parties' contracts overrides New York's choice of law rules is unavailing. Although the contracts provide that they will be governed by New York law,[4] that is "irrelevant" to assessing alter ego claims. Kalb, Voorhis & Co. v. American Fin. Corp., 8 F.3d 130, 132 (2d Cir. 1993); see also Blue Whale Corp. v. Grand China Shipping Development Co., Ltd., 722 F.3d 488, 496 (2d Cir. 2013).

---

[3] (Compl. ¶ 25)
[4] See, e.g., Senior Promissory Notes, Compl. Ex. 1; Senior Release Agreement, Compl. Ex. 2.

8

2.     *Delaware Alter Ego*

The Delaware law of alter egos involves a two-part test:  (1) whether the entities

in question operated as a single economic entity, and (2) whether there was an overall element of

injustice or unfairness.  NetJets Aviation, Inc. v. LHC Communications, LLC, 537 F.3d 168,

176-77 (2d Cir. 2008).

In determining whether entities operated as a single economic entity, courts

examine several factors, including: (1) whether the corporation was adequately capitalized for

the corporate undertaking; (2) whether the corporation was solvent; (3) whether dividends were

paid, corporate records kept, officers and directors functioned properly, and other corporate

formalities were observed; (4) whether the dominant shareholder siphoned corporate funds; and

(5) whether, in general, the corporation simply functioned as a façade for the dominant

shareholder.  NetJets Aviation, Inc., 537 F.3d at 177.  To pierce the veil, a combination of factors

must be present.  NetJets Aviation, Inc., 537 F.3d at 177 (citation omitted).

Cougentakis adequately pleads that Strategic, Bell, and Staton operated as a single

economic entity.  The Complaint alleges that Strategic had no assets to pay its obligations,[5]

observed no corporate formalities, and had no facilities outside of Bell's offices.[6]  The

Complaint also pleads that Bell and Staton used Strategic's capital to structure a deal for Bell and

Staton's benefit and that Bell and Staton exercised total control over Strategic's business

decisions.[7]

The Complaint alleges sufficient facts to establish that fundamental fairness

warrants piercing the veil as to Bell and Staton.  According to the Complaint, Bell and Staton

---

[5] Compl. ¶¶ 71-78
[6] Compl. ¶ 70.
[7] See, e.g., Compl. 78.

executed a scheme to obtain releases for themselves and FFN by inducing the Strategic Investors to tender the down payment and then siphoning the initial public offering funds for their personal benefit rather than using those funds to satisfy Strategic's obligations to the Senior Creditors.[8] Having met both prongs of Delaware's alter ego test, the motion to dismiss Cougentakis' veil piercing claims against Bell and Staton is denied.

However, the Complaint makes no specific allegations concerning the Trusts. Rather, it asserts in conclusory fashion that the Trusts are "alter egos."[9] Those threadbare allegations are insufficient to state a claim. Accordingly, the veil piercing claims as to the Trusts are dismissed.

## CONCLUSION

For the foregoing reasons, Photios Cougentakis's motion for partial summary judgment on the breach of contract claim is granted and his motion for specific performance is denied. Strategic Media I LLC's motion for partial summary judgment on its affirmative defense of equitable estoppel is denied. Marc Bell and Daniel Staton's motion to dismiss the veil piercing claim is denied. Finally, the Trusts' motion to dismiss the veil piercing claim is granted with leave to replead by November 25, 2014. The Clerk of Court is directed to terminate the motions pending at 31, 34, and 57.

Dated: November 4, 2014
      New York, New York

SO ORDERED:

WILLIAM H. PAULEY III
U.S.D.J.

---

[8] Compl. ¶¶ 68-85.
[9] Compl. ¶¶ 73, 79.

10

*Counsel of Record*:

David Eliezer Yerushalmi, Esq.
American Freedom Law Center
640 Eastern Parkway, Suite 4C
Brooklyn, NY 11213
*Counsel for Plaintiff*

Joseph Lee Sorkin, Esq.
Jessica Oliff Daly, Esq.
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, NY 10036
*Counsel for Defendants*